1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RUSTY LUGO,                              No. CIV S-09-0505-MCE-CMK-P

12              Plaintiff,

13        vs.                                 FINDINGS AND RECOMMENDATIONS

14   WILLIAMS, et al.,

15              Defendants.

16   _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.[1]   Pending before the court is defendants' unopposed motion to dismiss

19   (Doc. 24) based on failure to exhaust administrative remedies.  In the alternative, defendants seek

20   summary judgment on the merits of plaintiff's claims.  Submitted with defendants motion and

21   before the court is defendants' statement of undisputed facts ("UF"; Doc. 25), with

22   accompanying exhibits.[2]

23   / / /

24   _____

25        [1]     Plaintiff raised the same claims in a prior action – CIV-S-07-1134-MCE-JFM –
     which was dismissed without prejudice for failure to resolve fees.

26        [2]     By order issued on August 26, 2010, Exhibit B has been filed under seal.

                                            1

# I. BACKGROUND

Plaintiff names Williams and Malvia as defendants.  He claims that, in May 2007, defendants were deliberately indifferent to the conditions of his confinement and used excessive force.   In particular, plaintiff alleges that he was left in restraints for eight hours.  Defendants' undisputed evidence establishes the following:

1.   On the morning of May 4, 2007, correctional officers discovered inmate Perry in the dayroom with a swollen and bleeding mouth;

2.   Because no officers observed what had happened, an investigation was initiated;

3.   Several inmates were interviewed as part of the investigation;

4.   According to the inmate witnesses, plaintiff was in the dayroom and, when Perry entered, plaintiff approached him, said a few words, then struck Perry in the mouth with his fist;

5.   Plaintiff was then placed in restraints and taken to the medical clinic by defendant Malvia to be reviewed both medically and psychiatrically before placement in administrative segregation;

6.   Plaintiff arrived at the clinic and became disruptive, at times swearing at correctional staff;

7.   The nurse specifically noted that plaintiff refused an examination, telling her to "get out of my face" and "go stick your head in a toilet";

8.   Based on plaintiff's continued disruptive behavior while in the clinic, plaintiff was placed in a prone position by defendant Malvia whereupon leg restraints were applied;

9.   Plaintiff complied with defendant Malvia's instructions during the application of restraints and admitted during his deposition that his behavior could be seen as resistive;

10.   Upon examination by the prison psychologist, the doctor noted that plaintiff had been restrained due to resistive behavior and that plaintiff was "highly agitated";

11.   The doctor cleared plaintiff for administrative segregation placement, but did not order restraints removed at that time;

12.   Plaintiff was seen at the medical clinic later the same day complaining of an inability to breathe;

/ / /

13.    Upon examination, the clinic nurse noted that plaintiff had a slightly "prolonged expiration but good exchange and no wheezing;"

14.    Plaintiff was provided medication and returned to administrative segregation;

15.    Plaintiff was later seen in his cell by prison mental health staff who noted that plaintiff was "lying comfortably in his bed with his blanket on";

16.    At that time, plaintiff did not complain of pain or request medical attention; and

17.    On May 7, 2007, plaintiff complained of groin pain for the first time and was seen by a prison doctor the following day.

## II.  APPLICABLE LEGAL STANDARDS

### A.    Motion to Dismiss

A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20.  Where the court looks beyond the pleadings to a factual record in deciding the motion to dismiss, which is ". . . a procedure closely analogous to summary judgment," the court must assure that the plaintiff has faire notice of his opportunity to develop a record.  Id. at 1120 n.14 (referencing the notice requirements outlined in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Defendants bear the burden of establishing that the plaintiff failed to exhaust administrative remedies prior to filing suit.  See Wyatt, 315 F.3d at 1120.  If the court concludes that administrative remedies have not been exhausted, the unexhausted claim should be dismissed without prejudice.  See id. at 1120; see also Jones v. Bock, 127 S.Ct. 910 (2007).

/ / /

/ / /

B.    **Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

3  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

4  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

5  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

6          In the endeavor to establish the existence of a factual dispute, the opposing party

7  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

8  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

9  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

10 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

11 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

12 committee's note on 1963 amendments).

13         In resolving the summary judgment motion, the court examines the pleadings,

14 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

15 any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

16 Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

17 before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

18 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

19 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

20 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

21 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

23 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

24 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

25 / / /

26 / / /

# III.  DISCUSSION

Defendants argue: (1) plaintiff failed to exhaust administrative remedies prior to filing suit; and alternatively (2) defendants are entitled to summary judgment on the merits of plaintiff's claims.[3]

A.    **Exhaustion**

Defendants argue:

> Plaintiff did not complete the grievance process concerning the allegations made in his complaint.  The undisputed evidence establishes that Plaintiff filed a grievance on May 19, 2007, in which he alleged that he was placed him in handcuffs for eight hours, causing him to suffer a hernia. (UF 20).  Plaintiff requested medical care, to file a lawsuit, and to register a staff complaint. (UF 20).  The appeal was bypassed at the informal and first formal levels of review.  On June 28, 2007, Plaintiff's appeal was partially granted at the second level of review. (UF 21).  The response noted that Plaintiff's allegations of being in handcuffs for eight hours were unsubstantiated because Plaintiff was initially placed in handcuffs after the morning meal, and was re-housed in administrative segregation before noon. (UF 21).  The response also noted that because Plaintiff had refused medical treatment, it was unclear how, or when, Plaintiff developed a hernia. (UF 21).  The appeal was granted insofar as Plaintiff's allegations had been investigated. (UF 22).  Plaintiff was advised that he could appeal the decision to the Director's Level of Review. (UF 22).
> Plaintiff admits that he did not appeal to the Director's Level of Review.  (UF 23).  Moreover, the Inmate Appeals Branch has no record that Plaintiff filed a grievance concerning the allegations of his complaint that was accepted for review at the Director's Level. (UF 23).
> Although Plaintiff filed two additional grievances, both were rejected as duplicative of the appeal filed May 19, 2007. (UF 24).
> The undisputed evidence establishes that Plaintiff did not complete the grievance process with regard to the allegations of the complaint before he filed suit. Accordingly, the complaint should be dismissed.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

---

[3]      In the context of their summary judgment argument, defendants also assert that they are entitled to qualified immunity.

1   the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

2   while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

3   Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199

4   (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in

5   the complaint because lack of exhaustion is an affirmative defense which must be pleaded and

6   proved by the defendants; (2) an individual named as a defendant does not necessarily need to be

7   named in the grievance process for exhaustion to be considered adequate because the applicable

8   procedural rules that a prisoner must follow are defined by the particular grievance process, not

9   by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some,

10  but not all, claims are unexhausted.

11          The Supreme Court also held in Woodford v. Ngo that, in order to exhaust

12  administrative remedies, the prisoner must comply with all of the prison system's procedural

13  rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

14  exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

15  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

16  which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

17  at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

18  quantity of prisoner suits "because some prisoners are successful in the administrative process,

19  and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

20          A prison inmate in California satisfies the administrative exhaustion requirement

21  by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of

22  Regulations.  In California, inmates "may appeal any departmental decision, action, condition, or

23  policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code

24  Regs. tit. 15, § 3084.1(a).  These regulations require the prisoner to proceed through several

25  levels of appeal:  (1) informal resolution; (2) formal appeal; (3) second level appeal to institution

26  head; (4) third level appeal to the director of the California Department of Corrections and

1  Rehabilitation.  A decision at the third formal level, which is also referred to as the director's

2  level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal.

3  Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  Departmental appeals coordinators may

4  summarily reject a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§

5  3084.3(c)(6) and 3084.6(c).

6          In certain circumstances, the regulations make it impossible for the inmate to

7  pursue a grievance through the entire grievance process.  See Brown v. Valoff, 422 F.3d 926, 939

8  n. 11 (9th Cir. 2005).  Where a claim contained in an inmate's grievance is characterized by

9  prison officials as a "staff complaint" and processed through a separate confidential process,

10 prison officials lose any authority to act on the subject of the grievance.  See id. at 937 (citing

11 Booth, 532 U.S. at 736 n. 4).  Thus, the claim is exhausted when it is characterized as a "staff

12 complaint."  See id. at 940.  If there are separate claims in the same grievance for which further

13 administrative review could provide relief, prison regulations require that the prisoner be notified

14 that such claims must be appealed separately.  See id. at 939.  The court may presume that the

15 absence of such a notice indicates that the grievance did not present any claims which could be

16 appealed separate from the confidential "staff complaint" process.  See id.

17         As reflected in defendants' Exhibit D, which consists of excerpts from plaintiff's

18 deposition taken on December 17, 2009, plaintiff admitted that he did not seek a Director's Level

19 review.  However, defendants' exhibits, specifically Exhibit A, reflects that plaintiff's grievance

20 was characterized as a confidential staff complaint.  For this reason, the court cannot conclude

21 that plaintiff failed to exhaust administrative remedies.  While the grievance response also

22 indicates that plaintiff can appeal further, it does not appear that issues unrelated to the staff

23 complaint issue were raised in the grievance which could be appealed separately.

24 / / /

25 / / /

26 / / /

B.   **Merits**

In his complaint, plaintiff alleges liability arising from the following: (1) his lengthy placement in restraints; and (2) excessive force while being restrained.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

between the need for force and the amount of force used; (4) the nature of the threat reasonably

perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

because the use of force relates to the prison's legitimate penological interest in maintaining

security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

475 U.S. at 321-22.

### 1.    Time in Restraints

As defendants correctly note, there is no bright-line rule for determining when a

continuous placement in restraints constituted a constitutional violation.  In Key v. McKinney,

the Eighth Circuit concluded that there was no constitutional violation where the prisoner had

been in restraints for 24 hours.  See 176 F.3d 1083, 1086 (8th Cir. 1999).  In Williams v. Burton,

the Eleventh Circuit concluded that the Eighth Amendment had not been violated where an

inmate had been held in four-point restraints for over 28 hours.  See 943 F.2d 1572, 1576 (11th

Cir. 1991).  And in LeMaire v. Maass, the Ninth Circuit upheld the use of four-point restraints

for an extended period of time for an inmate with serious disciplinary problems.  See 12 F.3d

1444, 1459-60 (9th Cir. 1993).  However, in Hope v. Pelzer, the Supreme Court concluded that

an inmate's Eighth Amendment rights had been violated where prison officials subdued the

prisoner, placed him leg irons, ordered him to remove his shirt, and then handcuffed him to a

hitching post where he remained for seven hours.  See 536 U.S. 730, 737 (2002).  The Supreme

Court held that "cuffing an inmate to a hitching post for a period of time extending past that

required to address an immediate danger or threat is a violation of the Eighth Amendment."  Id.

at 747.

/ / /

/ / /

1          The undisputed evidence reveals that plaintiff was initially placed in handcuffs by

2    defendant Malvia at about 7:30 a.m. on May 4, 2007.   At about 9:30 a.m. plaintiff was seen at

3    the medical clinic, still in restraints.  At 10:13 a.m. plaintiff was examined by the prison

4    psychologist, who noted that plaintiff was highly agitated and still restrained.  The doctor did not

5    direct that the restraints be removed at that time, but cleared plaintiff for placement in

6    administrative segregation.  At 11: 05 plaintiff was again seen at the medical clinic, this time not

7    in restraints.  It is unclear when the restraints were removed, but it is apparent that they had been

8    removed by 11:05 a.m.  Assuming that restraints had not been removed until the 11:05 a.m.

9    clinic visit, the plaintiff had been in restraints for at most 3 1/2 hours.

10          The court concludes that the time plaintiff spent in restraints did not exceed the

11   time necessary to address the danger plaintiff posed at the time.  Plaintiff was initially placed in

12   handcuffs following his assault on inmate Perry.  He was maintained in restraints while being

13   examined at the medical clinic where he was observed to be disruptive to both correction officers

14   and the clinic nurse, telling the latter to "go stick your head in a toilet."  Fearing further

15   disruption and/or possible escalation, plaintiff was ordered placed in leg restraints and then

16   strapped to a gurney and taken to administrative segregation.  The evidence reflects that plaintiff

17   complied with this process.  About an hour later at 10:13 a.m. plaintiff, who was still restrained,

18   was examined by a prison psychologist who noted that plaintiff was extremely agitated and

19   angry.  Restraints were not removed at this time but were removed by 11:05 a.m.

20          Here, plaintiff posed a threat to institutional security and safety by assaulting

21   inmate Perry.  This justified his initial placement in restraints.  By the time he arrived at the

22   medical clinic a short time later, plaintiff was disruptive and abusive to staff.  This justified the

23   continued use of restraints.  While plaintiff complied with the addition of leg shackles, when he

24   was examined by the prison psychologist a short time later plaintiff was noted to be agitated and

25   angry.  This justified the continued time in restraints.  By 11:05 a.m. restraints had been

26   removed.  Plaintiff was in mechanical restraints for, at most, 3 1/2 hours, during which time he

1   was noted to be agitated, angry, and/or abusive to staff.  By the 11:05 a.m. clinic visit, plaintiff

2   had calmed down to the point where restraints had been removed.  This case is clearly

3   distinguishable from Hope where the inmate was made to stand cuffed to a hitching post far

4   beyond the time the inmate represented an immediate danger.  Here, by the time the threat of

5   immediate danger plaintiff represented had diminished (i.e., 11:05 a.m.), restraints were

6   removed.

7               2.      Use of Force

8               Plaintiff contends that defendant Malvia applied excessive force when leg

9   restraints were applied.  The court agrees with defendants, however, that "the undisputed

10  evidence shows that Plaintiff was belligerent and resisting staff, cursing and insulting both the

11  officers and the nurse."  Further, as defendants note, plaintiff admitted at his deposition that his

12  conduct in the medical clinic preceding the application of leg restraints could have been seen as

13  resisting.  Finally, the evidence indicates that the amount of force used to subdue plaintiff was

14  minimal given that plaintiff cooperated and did not complain of any pain or injuries that day.

15  Given these facts, the court finds that the use of force was reasonable.  There is absolutely no

16  evidence that force was applied maliciously or sadistically for the sole purpose of inflicting pain.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

**IV.  CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1.      Defendants' unopposed motion to dismiss, or in the alternative for summary judgment, (Doc. 24) be granted; and

2.      Summary judgment be entered in favor of defendants and against plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**DATED:  November 22, 2010**

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE